UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PATRICIA ANN HINES-SHARP,

    Plaintiff,

vs.                                                Case No. 3:11-cv-645-J-12MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed applications for a period of disability and Disability Insurance Benefits ("DIB") on June 29, 2006 and for Supplemental Security Income ("SSI") on July 13, 2006, alleging a disability beginning March 5, 2003. (Doc. 13 at 98-100). The claims were denied administratively and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on July 26, 2007. (Tr. 18). On June 9, 2009, a

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

hearing was held before the Honorable Stephen C. Calvarese. (Tr. 31-72). On July 15, 2009, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 12-22). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Having exhausted all administrative remedies, Plaintiff filed a timely Complaint on June 30, 2011 (Doc. 1), seeking judicial review of the ALJ's final decision.

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claimed to be disabled since March 5, 2003 as a result of: cirrhosis of the liver, sickle cell trait, asthma, and muscle spasms. (Tr. 230).

### B.     Summary of Applicable Evidence Before ALJ

Plaintiff was 50 years of age at the time the ALJ conducted the June 9, 2009 administrative hearing. (Tr. 46). Plaintiff had completed the sixth grade, was able to communicate in English, and had past relevant work experience as a vegetable harvest worker. (Tr. 28, 46-47, 229-30). As this appeal deals only with Plaintiff's mental impairments, the Court will limit its discussion to the medical evidence regarding Plaintiff's mental limitations.

On June 12, 2007, Louis Legum, Ph.D. evaluated plaintiff. (Tr. 345-49). During the evaluation, Dr. Legum noted Plaintiff had a prior crack cocaine addiction in the 1980's and was presently using alcohol as an analgesic "when the medicine [did not] kick in." (Tr. 346). According to Dr. Legum, other than attending a voluntary drug treatment program for her crack cocaine addiction, Plaintiff never sought mental health treatment prior to the evaluation. (Tr. 346-47). In his evaluation, Dr. Legum observed Plaintiff "presented neatly garbed" for the evaluation and her speech was "lucid,

articulate and productive." (Tr. 347). Dr. Legum remarked "[Plaintiff's] [t]hought processes [were] sequential, relevant, logical, and goal-directed. There [was] no indication of her being delusional, paranoid, or hallucinated. The [plaintiff] [did] not identify any . . . obsessions, or compulsions. Affect [was] restricted in quality but appropriate, with mood deemed to be dysphoric." Id. Dr. Legum further mentioned Plaintiff was alert during the interview and was able to identify basic personal information about herself, but was unable to answer questions regarding news stories or national politics. Id. Plaintiff was able to repeat five numbers forward, but only three backwards and was unable to recall three words after seven minutes latency. Id. Dr. Legum surmised Plaintiff to be in the range of "Mild Mental Retardation" and "perhaps at the low end of borderline ability." (Tr. 348). Dr. Legum assigned Plaintiff a GAF score of 50-55.[2] Id. Further, Dr. Legum recommended Plaintiff undergo formal IQ testing. Id.

On June 30, 2007, Jane Cormier, Ph.D. completed a Psychiatric Review Technique Form based upon Dr. Legum's evaluation. (Tr. 351-63). Dr. Cormier diagnosed Plaintiff with a mood disorder and "[p]olysubstance [a]buse/[d]ependence [i]n [p]artial [r]emission." (Tr. 354, 359). Dr. Cormier also determined Plaintiff's functional limitations based upon a scale of Plaintiff's degree of limitation from None to Extreme.[3]

---

[2] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 34 (4th ed. 1994). A GAF of 51-60 indicates Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). Id.

[3] The scale was not defined in the document, however the form refers the doctor to 20 C.F.R., Part 404, Appendix 1, Listing 12.00(c) for instructions.

(Tr. 361). Dr. Cormier determined Plaintiff did not to have any limitations or restrictions of activities of daily living or episodes of decompensation of extended duration. Id. Dr. Corimer assigned Plaintiff mild limitations in maintaining social functioning and in maintaining concentration, persistence, or pace. Id.

On October 27, 2008, Dr. Legum completed a "Mental Residual Function Capacity Assessment" ("MRFC") based upon his June 12, 2007 evaluation of Plaintiff. (Tr. 380-82). In the assessment, Dr. Legum was asked to describe Plaintiff's level of restrictions in twenty different areas according to a scale of intensity from Mild to Extreme.[4] (Tr. 380). The twenty questions were broken down into four separate categories: (1) Understanding and Memory, (2) Sustained Concentration and Persistence, (3) Social Interaction, and (4) Adaptation. (Tr. 380-83).

Under the heading of Understanding and Memory, Dr. Legum determined Plaintiff had mild restrictions in the ability to understand and remember very short and simple instructions. (Tr. 380). Dr. Legum concluded Plaintiff had moderate-to-marked restrictions in her ability to understand and remember detailed instructions." Id.

Under Sustained Concentration and Persistence, Dr. Legum found Plaintiff had mild restrictions in the ability to carry out very short and simple instructions and to make simple work related decisions. (Tr. 380-81). He determined Plaintiff had moderate restrictions in the ability to: sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, and

---

[4] The scale defines the levels as follows: Mild: "Ability to function in this area is limited," Moderate: "Ability to function in this area is seriously limited," Marked: "Ability to function in this area is very seriously limited," and Extreme: "No useful ability to function in this area." (Tr. 380).

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 381). Finally, Dr. Legum found Plaintiff to have low-moderate-to-marked restrictions in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; and perform activities within a sequence, maintain regular attendance, and be punctual within customary tolerances. (Tr. 380-81).

Under the category of Social Interaction, Dr. Legum determined Plaintiff had mild restrictions in the ability to: interact appropriately with the general public, ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 381-82). Dr. Legum opined Plaintiff had mild-to-moderate restrictions in the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 381).

Finally under Adaptation, Dr. Legum surmised Plaintiff had moderate restrictions in her ability to: respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others. (Tr. 380).

At the bottom of this assessment, Dr. Legum noted, "[t]here are persistent concerns about the [plaintiff]'s level of intellectual functioning." (Tr. 382). As he recommended in his evaluation on June 12, 2007, Dr. Legum again suggested Plaintiff undergo formal IQ testing. (Tr. 380).

On December 3, 2008, Sherry V. Risch, Ph.D. conducted a psychological evaluation of Plaintiff upon referral by the Department of Health. (Tr. 395-404). According to Dr. Risch, Plaintiff stated she "was trying to quit alcohol" and the last time Plaintiff was drunk was in November. (Tr. 395). Plaintiff denied a history of crack cocaine use, but admitted she smoked marijuana and "quit abusing drugs three years ago." (Tr. 395). Dr. Risch observed Plaintiff arrived on time and was "casually dressed," however, Dr. Risch also remarked Plaintiff "exuded a mild odor of alcohol." (Tr. 397, 400). According to Dr. Risch, Plaintiff did not complete the paperwork and "push[ed] it away stating she did not understand the simple questions." (Tr. 397). Dr. Risch found Plaintiff's speech to be clear and she observed "no deficits in expressive or receptive language." (Tr. 397).

When Dr. Risch asked Plaintiff the date, she was unable to recall the correct date stating it was "1908," however, Dr. Risch noted that according to previous records, Plaintiff was able to recall the correct date during examinations. (Tr. 397). Dr. Risch documented "[Plaintiff's] thought processing was simplistic, but logical and goal oriented." (Tr. 397). Dr. Risch opined Plaintiff appeared to be of lower intellect, however, she presented a lower functioning intellect than might actually be true. (Tr. 397). Furthermore, Plaintiff stated she "hear[d] voices, like people talking to her," but Dr. Risch concluded the experiences "[were] not consistent with a formal thought disorder." (Tr. 397).

During the evaluation, Dr. Risch asked Plaintiff to: count forward and backward, spell, and recall related words. (Tr. 397-98). However, Plaintiff appeared to have varying degrees of difficulty with the tasks. (Tr. 397-98). Dr. Risch surmised Plaintiff's

Page 6

mental exam and her documented history were "inconsistent." (Tr. 398). Due to the inconsistencies in her testing and history, Dr. Risch suspected Plaintiff's behaviors during the exam "were most likely not true representations of [Plaintiff's] abilities." (Tr. 398).

While examining Plaintiff, Dr. Risch administered two different IQ tests. (Tr. 398-99). However, Dr. Risch determined Plaintiff invalidated the scores on both tests because, in her opinion, Plaintiff "did not [put] forth her best effort" and because Plaintiff did not follow instructions and omitted questions after being told not to. (Tr. 398-99). For the second test, due to Plaintiff's "limited reading abilities," Dr. Risch provided Plaintiff with the questions orally on CD. (Tr. 399). However, Plaintiff refused to use the CD, stating it was "going too slow" and "she could read the questions fine." (Tr. 399).

Dr. Risch diagnosed Plaintiff with "Polysubstance Dependence, . . . Alcohol Dependence, Borderline Intellect, . . . [and] Chronic Pain and Muscle Spasms." (Tr. 400). Further, Dr. Risch assigned Plaintiff a GAF score 65[5] and concluded:

> [Plaintiff] [was] capable of learning repetitious and rote information. [Plaintiff] would not be able to learn complex job skills. [Plaintiff] [was] capable of following simple instructions. [Plaintiff] ha[d] appropriate interpersonal skills and therefore, she [was] capable of interacting with coworkers, supervisors, and the public without problem. [Plaintiff] would most likely be of poor reliability [and] predictability due to her chronic pain complaints [and] [Plaintiff] would not be able to maintain persistence and pace for the same reason.

(Tr. 401).

---

[5] A GAF Score of 61-70 indicates some mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 34 (4th ed. 1994).

Dr. Risch also completed and attached to her evaluation a "Medical Source Statement of Ability to do Work-Related Activities (Mental)." (Tr. 402-04). Dr. Risch rated Plaintiff's ability to perform specific activities on a scale from None-Extreme.[6] Dr. Risch determined Plaintiff had mild difficulties with her ability to: understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; and interact appropriately with the public, supervisor(s), and co-workers. (Tr. 402-03). Dr. Risch also found Plaintiff had moderate difficulties with her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 403). Finally Dr. Risch concluded Plaintiff had marked difficulties in her ability to: understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. (Tr. 402).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a plaintiff is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a plaintiff does not

---

[6] The scale defines None as, "absent or minimal limitations. If limitations are present, they are transient and/or expected reactions to psychological stresses." Mild is defined as, "a slight limitation in this area, but the individual can generally function well." Moderate is defined as, "more than a slight limitation in this area but the individual is still able to function satisfactorily." Marked is defined as, "serious limitation in this area. There is a substantial loss in the ability to effectively function." Extreme is defined as, "a major limitation in this area. There is no useful ability to function in this area." (Tr. 402).

have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. § 404.1520(c). Third, if a plaintiff's impairments meet or equal an impairment listed in 20 C.F.R. Part 404 Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a plaintiff's impairments do not prevent her from doing past relevant work, she is not disabled. § 404.1520(e). Fifth, if a plaintiff's impairments (considering her Residual Functional Capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through September 30, 2006. (Tr. 20). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 5, 2003. (Tr. 20). At step two, the ALJ found Plaintiff had the following severe impairments: history of liver disease, pain disorder, history of polysubstance dependence, borderline intellect, and history of alcohol dependence. (Tr. 20). At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-22).

The ALJ further determined Plaintiff had the RFC to perform a slightly reduced range of light work as defined in §§ 404.1567(b) and 416.967(b). (Tr. 22). Specifically, the ALJ found Plaintiff was able to:

> lift or carry up to 20 pounds occasionally and lift or carry up to 10 pounds frequently. The [plaintiff] can stand, walk, and sit for up to 6 hours in an 8 hour day with no breaks. Additionally, the [plaintiff] has marked limitation in understanding and remembering complex instructions as well as marked limitation in carrying out complex instruction and making judgments in work related decisions; this is based on the [plaintiff]'s lower intellect and learning problems. The [plaintiff] is moderately restricted in her ability to respond appropriately to usual work situations and changes in work settings.

(Tr. 22). In making this determination, the ALJ found Plaintiff's impairments could reasonably be expected to produce the alleged symptoms. (Tr. 24). However, he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not credible to the extent they were inconsistent with the RFC assessment. (Tr. 24).

At step four, the ALJ utilized the testimony of a Vocational Expert ("VE") during the hearing to determine if Plaintiff could perform any of her past relevant work. (Tr. 28, 64). The VE concluded Plaintiff could perform her past relevant work as a vegetable harvester, if the work was "light-duty" as previously performed by Plaintiff. (Tr. 67)

The ALJ proceeded to step five in the sequential evaluation and utilized the testimony of the VE to determine if there would be any jobs in the regional or national economy the hypothetical person could perform. (Tr. 68-69). The VE determined all work in the national economy, except Plaintiff's past relevant work, would be precluded. (Tr. 69). However, as the VE testified Plaintiff could perform her past relevant work, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 28-29).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine reasonableness of factual findings).

The district court will reverse a Commissioner's decision on plenary review, if the decision applies incorrect law, or if the decision fails to provide the district court with

sufficient reasoning to determine the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).

### B. Issue on Appeal

Plaintiff raises one issue in this appeal. Plaintiff argues the ALJ erred by not properly including the ALJ's Psychiatric Review Technique Form ("PRT") findings in the RFC and the hypothetical posed to the VE as required by Winschel v. Commissioner of Social Sec., 631 F.3d 1176 (11th Cir. 2011). (Doc. 16 at 7-12). Specifically, Plaintiff contends the hypotheticals posed to the VE were deficient because the ALJ failed to include his finding that Plaintiff had marked difficulties with concentration, persistence, and pace. (Doc. 16 at 7-12). In response, the Commissioner argues the ALJ did not err because Plaintiff's difficulties in concentration, persistence, and pace were explicitly or implicitly accounted for in the hypothetical. (Doc. 19 at 5 (citing Winschel, 631 F.3d at 1181)). Therefore, the Commissioner contends the ALJ's decision is in compliance with Winschel and his finding of not disabled is supported by substantial evidence. (Doc. 19 at 5).

Plaintiff is correct that the court in Winschel held that simply including restrictions to unskilled work or simple, routine tasks in a hypothetical to a VE, without more, did not adequately account for limitations in concentration, persistence, or pace. 631 F.3d at 1180. However, as the Commissioner notes, the Winschel court also held that when an ALJ finds a claimant capable of working despite a PRT assessing difficulties in maintaining concentration, persistence, and pace, the ALJ must: (1) indicate that medical evidence suggests the claimant can work despite the difficulties or (2) explicitly or implicitly account for the difficulties in a hypothetical question to a VE. Id. at 1180-81.

In the instant case, the undersigned finds the ALJ did the latter.

In considering an individual with a mental impairment, the ALJ is required to use the "'special technique' dictated by the [PRT] for evaluating mental impairments." Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a-(a)). This technique requires separate evaluations on a five-point scale of how the individual's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a-(c)(3-4). The five-point scale used to assess mental impairments is: None, Mild, Moderate, Marked, Extreme. See 20 C.F.R. Part 404 Appendix 1, Listing 12.00(c). When assessing values on the five-point scale, a value of marked is defined as "more than moderate and less than extreme," and mild is defined as "less than moderate but more than none." Id. The ALJ will utilize the PRT to determine the severity of a claimant's mental impairment. If a mental impairment is judged to be severe but not to meet or equal a Listing, assessment of a claimant's mental RFC is required. See 20 C.F.R. § 404.1520a. If the mental impairment is judged non-severe, no mental RFC assessment need be made. Id.

In the instant case, at the PRT stage of analysis, the ALJ determined Plaintiff had no restrictions in activities of daily living and Plaintiff had no difficulties with social functioning. (Tr. 22). With regard to concentration, persistence, or pace, the ALJ found Plaintiff had marked difficulties. Id. Finally, the ALJ noted Plaintiff had experienced no episodes of decompensation. Id. In making these findings, particularly the finding regarding concentration, persistence, and pace, the ALJ accorded great weight to, and effectively adopted, the opinions of Dr. Risch. (Tr. 22, 27).

After completing a PRTF in which a severe mental impairment is found, the ALJ must ensure the RFC addresses all mental limitations and restrictions and expresses such limitations and restrictions in terms of work-related functions. See SSR 96-8p. Work-related functions include: consideration of the ability to understand, to carry out and remember instructions; to use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting. Id. In the instant case, the ALJ utilized Dr. Risch's Medical Source Statement of Ability to do Work-Related Activities to translate the PRT findings into an RFC which found Plaintiff had marked limitations in understanding, remembering, and carrying out complex instructions and making judgments in work related decisions. (Tr. 22). Additionally, the ALJ found Plaintiff was moderately restricted in her ability to respond appropriately to usual work situations and changes in work settings. Id. Therefore, in the RFC, the ALJ articulated a more detailed explanation of Plaintiff's specific nonexertional limitations and difficulties, which were identified in the PRT, and expressed those limitations in terms of work-related functions as required by Winschel and SSR 96-8. See Winschel, 631 F.3d at 1180; SSR 96-8.

While Plaintiff is correct that the ALJ did not specifically state Plaintiff had marked restrictions in concentration, persistence, or pace in the hypothetical to the VE, the ALJ instead utilized the exact findings of Dr. Risch with respect to Plaintiff's mental RFC; namely, that Plaintiff had marked limitations in understanding, remembering, and carrying out complex instructions and making judgments in work related decisions and moderate limitations in her ability to respond appropriately to usual work situations and changes in work settings. (Tr. 22). The Plaintiff does not challenge the ALJ's treatment

of Dr. Risch's findings. Further, Plaintiff does not explain how the limitations included in the RFC and the hypothetical posed to the VE failed to reflect the ALJ's PRT finding of marked difficulties in maintaining concentration, persistence, or pace. Instead, Plaintiff seems to take the position that the ALJ should have just repeated the PRT findings in the hypothetical to the VE. "'There is no obligation, however, to transfer the findings on the PRTF (Psychiatric Review Technique Form) verbatim to the hypothetical question.'" Sensing v. Astrue, No. 6:10-cv-3084-RBH, 2012 WL 1016581, *6 (D. S.C. Mar. 26, 2012) (quoting Yoho v. Commissioner of Social Sec., 168 F.3d 484 (4th Cir. 1998)).

Unlike in Winschel, the ALJ here did not simply limit Plaintiff to unskilled work. Instead, he specifically included the findings of Dr. Risch in her Medical Source Statement of Ability to do Work-Related Activities in the hypothetical. The undersigned finds this sufficiently accounted for the PRT finding that Plaintiff had marked limitations in maintaining concentration, persistence, or pace. As noted above, the ALJ essentially repeated verbatim the findings of Dr. Risch. Moreover, Plaintiff has pointed to no evidence indicating any further limitations which should have been included in the hypothetical. Therefore, this Court finds the ALJ adequately accounted for Plaintiff's limitations related to concentration, persistence, and pace in the hypothetical he posed to the VE. Since the hypothetical posed to the VE in this case comprised all of Plaintiff's limitations, the ALJ's decision of not disabled is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards. Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **AFFIRMED**.


**DONE AND ENTERED** at Jacksonville, Florida, this   1st   day of May, 2012.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record
The Honorable Howell W. Melton,
    United States District Judge